**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**AMY BARBOZA,** )
)
Plaintiff )
) C.A. No.: 07-339 ML
**v.** )
)
**TOWN OF TIVERTON; JAMES AMARANTES, TREASURER; LOUISE DURFEE, PRESIDENT OF TOWN COUNCIL; W. GLENN STECKMAN III, TOWN ADMINISTRATOR; THOMAS BLAKEY, CHIEF OF POLICE**

Defendants

**STATEMENT FOR RULE 16 CONFERENCE**

## I. INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action was commenced by **Amy Barboza** (hereafter "Barboza" or "Plaintiff"), an individual, against **Town of Tiverton; James Amarantes, Treasurer; Louise Durfee, President of Town Council; W. Glenn Steckman III, Town Administrator; and Thomas Blakey, Chief of Police** (hereafter "Defendants"; "Employers"), in order to remedy and seek relief for the Defendants' alleged unlawful and discriminatory employment practices, in violation of Title VII of the Civil Rights Act of 1964; in addition to other federal, state, and common law claims.

At the time of the events at issue in this Complaint, Ms. Barboza, a female, was employed by the Defendants in the position of Patrol Officer with the Tiverton Town

Police Department. The Plaintiff alleges that she was discriminated against on the basis of her gender, subject to disparate treatment based on gender, subject to a sexually hostile work environment, and retaliated against for reporting unlawful workplace conditions.

## II. FACTS COMMON TO ALL COUNTS

Plaintiff is a female. Plaintiff was hired in 2005 by the Defendants in the position of Patrol Officer with the Town Police Department. In 2006, Plaintiff graduated from the Rhode Island Municipal Police Academy, successfully completing in all respects, the physical and educational training requirements of that program. In 2006, Plaintiff commenced her active duties as an active police officer. During the preceding period, Plaintiff was one of two female officers on the force, out of 27 officers. At all times, Plaintiff performed her duties as a new officer to the best of her abilities, attempting in good faith to rely on the guidance and training mentorship of her superior officers.

Upon assuming her duties as an officer, Plaintiff alleges that she was treated in a disparate manner compared to her male counterparts, including but not limited to being denied consistent and appropriate departmental training, being held to a different standard as that applied to male officers, being disciplined without justification, being given contradictory instructions, and otherwise being subjected to conditions of employment intended to obstruct and frustrate Plaintiff's opportunity to complete her probationary period.

In August 2006, Plaintiff was informed in writing that her probationary period was being extended from November 28, 2006, to February 28, 2007. Since commencing

her duties as an officer, Plaintiff alleges that she and other female employees of the Department, including dispatchers, have been subjected to disparate treatment and an ongoing pattern of severe sexually-oriented misconduct, perpetrated by Defendant Blakey. This misconduct created a hostile environment and unreasonably interfered with her ability to perform her job duties. During or about the end of October, 2006, Plaintiff and other female employees (including dispatchers) came forward to provide statements regarding the mistreatment to which they had been subjected. Plaintiff gave a statement, in the presence of the Deputy Chief and one of the detectives regarding this misconduct. Plaintiff felt intimidated during this meeting, because she was given no prior notice of the meeting, and had to answer personal questions from two male superiors. Subsequently, Plaintiff was directed to meet with Defendant Steckman. At the meeting with Defendant Steckman, the Deputy Chief was allowed to be present. Plaintiff requested to have another female officer with her, for support, but Defendant Steckman would not allow this fellow officer, or anyone else to accompany the Plaintiff. Prior to the meeting, Plaintiff had been assured by the Lieutenant that this fellow female officer could accompany her. At the meeting with Defendant Steckman, Plaintiff felt intimidated and coerced. Defendant Steckman indicated, among other things, that Defendant Blakey's conduct would likely result in a mere slap on the wrist. Defendant Steckman made comments to Plaintiff indicating that he did not believe that Defendant Blakey engaged in sexual harassment, that Defendant Blakey was simply trying to "be [Plaintiff's] friend," that Defendant Blakey was from "a different generation," and that Defendant Blakey believed his conduct was alright. Defendant Steckman also suggested to the Plaintiff that it was a strange coincidence that female employees (including Plaintiff) were coming

forward at this time, when the conduct of dispatchers was being reviewed. Defendant Steckman also told Plaintiff, among other comments, that he had seen Plaintiff's progress reports, that he knew Plaintiff had problems during her initial probationary, that Plaintiff had worked hard to prove herself and demonstrate that she is a good officer. Plaintiff viewed these comments as a clear threat that, if she continued to complain about workplace conditions, her job would be in imminent jeopardy, despite the fact that she had previously been informed, prior to her complaints about Defendant Blakey, that her probationary period was to be extended into February, 2007.

Within one week of Plaintiff's meeting with Defendant Steckman, when she reported for her regularly scheduled shift, Plaintiff was called into a meeting with the Deputy Chief, the Lieutenant, and a sergeant. Plaintiff was told that the Department would give her the "dignity" of resigning her job, and indicated that resigning would be a good idea if she intended to look for another job with another police force. Plaintiff was shocked at this announcement, because she had previously been informed that her probationary period was being extended to February 28, 2007, an indication that her performance was improving. During or about early October, 2006, about three weeks before Plaintiff gave her statement regarding sexual harassment in the workplace, the Deputy Chief told her that her progress reports were improving, that she was making progress, and that she should "keep up the good work."

After this incident, Plaintiff contacted an attorney who drafted a letter, on her behalf, to Defendant Steckman, indicating Plaintiff's belief that she was being subjected to discriminatory treatment based on gender, sexual harassment and retaliation. The letter was received by Defendant Steckman on November 17, 2006. Later on that same

day, Plaintiff went to the Police Department and was given a letter signed by Defendant Steckman and the Deputy Chief of Police, stating that Plaintiff was being placed on administrative leave. Plaintiff was ordered to surrender her firearm, badges, and identification and was told to report to Defendant Steckman on November 26, 2006. Plaintiff was terminated on November 27, 2006. Defendant Blakey was ultimately suspended and terminated. Defendant Blakey was subsequently reinstated to his position by Defendant Town of Tiverton, against the recommendation of Defendant Steckman, and despite proven misconduct.

## III. PERTINENT LAW

This case will be argued pursuant to the basic elements established in U.S. Supreme Court decisions analyzing hostile work environment and retaliation in the workplace and pertinent EEOC guidelines. *See* **Meritor Savings Bank v. Vinson**, 477 U.S. 57, 106 S. Ct 2399 (1986); **Burlington Industries v. Ellerth**, 524 U.S. 742, 118 S. Ct. 2257 (1998); **Faragher v. City of Boca Raton**, 524 U.S. 775 (1998); **EEOC Notice** #915.002 et seq. (June 18,1999). With respect to Plaintiff's state and federal claims the basic analysis will be the same. *See for example*, **Ward v. City of Pawtucket Police Department** 639 A2d 379 (RI 1994).

## IV. TRIAL ISSUES:

No unusual trial issues are anticipated. This case presents a straightforward example of disparate treatment, gender discrimination, hostile environment, and retaliation.

## V. PROCEEDINGS TO DATE:

The Parties have engaged in settlement negotiations, exchanging proposals, but have not reached a resolution. To date, no discovery has been exchanged. The Plaintiff is open to participating in the Court's alternative dispute resolution program.

Respectfully Submitted,
Amy Barboza,
By Her Attorney,
/s/ Stephen T. Fanning
Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)

Certification

I hereby certify that a true and correct copy of the above was served on counsel for the Defendant Jeffrey W. Kasle, Esq. by electronic mail at jeff@stpeterandkasle.com and Marc DeSisto, Esq. by electronic mail at marc@desistolaw.com on this 10th day of December, 2007.

/s/ Stephen T. Fanning